UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
CONAIR CORPORATION,

                Plaintiff,                Civil Action No.   1:19-cv-1284

   v.

CLARK ASSOCIATES, INC., and
THE WEBSTAURANT STORE,

                Defendants.
- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- --X

## COMPLAINT AND JURY DEMAND

Plaintiff Conair Corporation, by and through its undersigned counsel, as and for its Complaint against Defendants, alleges as follows:

## NATURE OF ACTION

1.     Plaintiff brings this action for trade dress infringement, trademark infringement, false designation of origin, and unfair competition and dilution under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and corresponding state law.

2.     Plaintiff is one of the largest consumer products companies in the world. A recognized leader in consumer and commercial kitchen appliances and cookware, it sells products in over 120 countries under various well-known and famous brands. These brands include WARING, the company known for introducing the first blender to American consumers, and CUISINART, the brand that introduced the home food processor to American consumers.

3.     Defendants are related companies that offer competing products in the commercial restaurant industry that have embarked on a campaign to compete unfairly with Plaintiff in the kitchen appliance and equipment industry by copying and infringing Plaintiff's

trade dress in its WARING commercial blenders and by using an imitation of Plaintiff's iconic CUISINART mark to promote their own products.  This attempt to misappropriate the goodwill and reputation associated with Plaintiff's trade dress and trademarks creates a likelihood of confusion about whether Defendants' products emanate from Plaintiff or are affiliated with or authorized by Plaintiffs and also dilutes Plaintiff's famous CUISINART mark.

4. Plaintiff brings this action to halt Defendants' infringing conduct, preserve its hard-won reputation and goodwill and protect its valuable intellectual property from the irreparable harm, likelihood of confusion and dilution caused by Defendants' acts.

## PARTIES

5. Plaintiff Conair Corporation ("Conair" or "Plaintiff") is a Delaware corporation with a principal place of business at 150 Milford Rd., East Windsor, NJ 08520.

6. Upon information and belief, Defendant Clark Associates, Inc. ("Clark") is a Pennsylvania corporation with a principal place of business at 2205 Old Philadelphia Pike, Lancaster, PA 17602.  Upon information and belief, Clark is the parent company of The Webstaurant Store and several other companies that manufacture and sell kitchen equipment and related goods and services to the food service industry.

7. Upon information and belief, Defendant The Webstaurant Store ("Webstaurant") is a Pennsylvania business entity that is related to Clark, with an address at 2205 Old Philadelphia Pike, Lancaster, PA 17602.  Webstaurant sells kitchen equipment and related goods online and through other channels.

8. Upon information and belief, Defendants have collaborated and acted in concert with one another to manufacture, market, distribute and sell the infringing products complained

31534/000/2536292.4

of herein and to infringe and dilute Plaintiff's marks in the State of New York and throughout the United States.

**JURISDICTION AND VENUE**

9. This Court has original jurisdiction over the claims arising under the Lanham Act pursuant to 15 U.S.C. § 1211 and 28 U.S.C. §§ 1331 and 1338. This court has supplemental jurisdiction over the claims arising under the laws of New York pursuant to 28 U.S.C. § 1367.

10. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c).

11. Personal jurisdiction exists over Defendants who regularly do business in this State and have committed the infringing acts complained of herein in this State, including offering goods and services under the infringing marks and trade dress in this State.

**FACTS**

I. **CONAIR'S BUSINESS AND VALUABLE INTELLECTUAL PROPERTY**

   A. **The History of Conair, the WARING Division and the CUISINART Brand.**

12. Conair is one of the largest consumer products company in the world and sells small appliances, personal care products and health and beauty products for both professionals and consumers. Founded in 1959, it has since expanded to include ten product divisions, including Waring, Cuisinart, Rusk, Interplak, Scunci and other household names.

13. Conair owns the various trademarks, trade dress, copyrights and other intellectual property used and associated with these businesses and brands. By marketing and promoting these various brand identifiers in connection with its hugely popular products, Conair has created a stable of extremely well-known marks and distinctive trade dresses that the public uses to identify and distinguish Conair's goods in the marketplace. These include the trade dress of

3

Waring's CB Series blenders as described below, and the CUISINART mark and variants (the "CUISINART Marks").

### B. The WARING Division

14. Under its Waring division, Conair manufactures culinary appliances and equipment for the commercial and consumer product markets. The WARING brand began as early as 1937, when Fred Waring, a popular entertainer at that time, introduced the "Miracle Mixer," the first blender in recorded history, to the American public at the National Restaurant Show. Shortly thereafter, the company was officially renamed Waring Corporation and the appliance name "Miracle Mixer" was changed to the "Waring Blendor."

15. Over the years, the Waring Blendor increased in popularity, and by the mid-1950s, the 1,000,000th Waring Blendor was sold. In fact, WARING blenders had become so renowned by then that Dr. Jonas Salk used one to develop the polio vaccine.

16. Over the years, the WARING brand continued to diversify, and by the mid-1980s, operated as two product divisions — Waring Commercial and Waring Pro. Waring Commercial manufactures and sells high-performance, large-volume blenders and other food appliances for the food and restaurant industry. Waring Pro manufactures and sells blenders, juice extractors, waffle makers and many other products for home consumer use. Blenders, however, have remained a mainstay of the WARING brand product line.

17. Conair acquired the Waring Corporation in 1998 and continued to expand the household and commercial products offerings under the WARING brand, which has maintained dominance in the kitchen products industry for over 75 years.

31534/000/2536292.4

18.     Among the iconic products in the Waring Commercial line is a series of heavy-duty stainless steel blenders used to mix soups, sauces, smoothies and for food blending for a variety of food products.  Introduced in 1966, these CB15 Series blenders have a distinctive look and trade dress that is recognizable by consumers in the food and restaurant industry, as well as other industries, and designates Conair as the source of those goods (the "Waring Blender Trade Dress").  The key identifying features of the Waring Blender Trade Dress consist of sculpted indentations running vertically down the front and back of the main container; tubular dual stainless handles affixed to the side of the container, with an asymmetrical arcuate shape; and a gray and black base with a uniquely shaped four prong black jar pad in which the prongs are each comprised of a sloping triangular shape, akin to claws grabbing the bottom of the blender. The overall look of these features is of a highly sculpted, architectural design that serves to alert consumers as to the source of the blenders.  An image of one of the Waring CB Series products and its associated trade dress is shown below:



31534/000/2536292.4

19. Conair's Waring Blender Trade Dress appears on its product and images of blenders bearing the Waring Blender Trade Dress are regularly featured on the product packaging and in Conair's advertising and promotional materials, including brochures, catalogs and sell sheets.

20. The Waring CB Series blenders are sold online and through various retail chains, as well as cash and carry dealers, catalogs and other channels.

21. Conair maintains a website in which it advertising its Waring products, including products bearing the Waring Blender Trade Dress at www.waringcommercialproducts.com, These blenders are also promoted at major trade shows and industry exhibitions, such as the NAFEM Show, the National Restaurant Associations Show and the International Hotel & Restaurant Show among others.

22. Conair's gross sales of blenders bearing Waring Blender Trade Dress are over $25 million over the past five years.

23. By virtue of this extensive sales, promotion and use, the Waring Blender Trade Dress has become widely known to the consuming public of the U.S., has acquired significant secondary meaning, and represents goodwill of enormous value to Plaintiff.

24. The Waring Blender Trade Dress is not functional, as it serves no utilitarian or aesthetically functional purpose, and its protection does not put competitors at any non-reputation related disadvantage. Defendants and other competitors have countless other options at their disposal in how to display and market their blender products.

6

C.     **Plaintiff's Famous CUISINART Marks and Brand**

25.    Under its Cuisinart division, Conair sells kitchen products such as cookware, kitchen utensils and kitchen appliances, including its iconic electric food processor, to consumers and professionals.  The CUISINART brand began in the 1973 when Carl Sontheimer, a retired MIT-trained physicist and accomplished cook, unveiled the food processor – a revolutionary kitchen appliance – to the U.S. market.

26.    By the late 1970s, the CUISINART food processor business had exploded, as sales soared from a few food processors a month to hundreds a month, due in part to the widespread use of the CUISINART brand food processor by culinary authorities such as James Beard, Julia Child, Craig Claiborne, Jacques Pepin and Helen McCully.  By 1977, sales of CUISINART brand products reached $50 million, and by the time the CUISINART brand was acquired by Conair in 1989, it was a premier housewares brand.

27.    Conair has continued to expand the product line under the CUISINART brand to the present day, and, in addition to the iconic food processor, the CUISINART line of products now includes coffee makers, cookware, kitchen utensils and gadgets, cookware, dinnerware, glassware, cutlery and related goods.  Today, the CUISINART brand is a market leader in kitchen appliances and cookware and one of the most recognized and respected brands in small kitchen appliances and cookware in the world.

28.    Conair's highly regarded CUISINART branded products are sold in retail stores and online throughout the U.S. and abroad.

29.    Conair extensively advertises and promotes is products and services in connection with the CUISINART Marks.  For instance, Conair maintains a dedicated website for the CUISINART brand, at www.cuisinart.com. (the "Cuisinart Website").  The CUISINART Marks

7

appear prominently on the Cuisinart Website through which countless consumers shop for and purchase Plaintiff's products.  Each page of the Cuisinart Website prominently features the CUISINART Marks to reinforce the connection between the brand and its products.  Plaintiff also has an established presence on Facebook, Twitter and YouTube for the CUISINART Marks and brand.

30. Plaintiff's marketing materials, brochures, catalogs, coupons and sell sheets likewise feature the CUISINART Marks.  Plaintiff advertises across all important media – television, radio and print – and invariably emphasizes the CUISINART Marks in those advertisements.

31. Plaintiff has garnered extensive publicity and positive reviews in print and other media for its products sold in connection with the CUISINART Marks.  Magazines and newspapers have featured stories on Plaintiff, its products and services, and its famous CUISINART brand.  This press coverage regularly mentions or display the CUISINART Marks.

32. Plaintiff has received numerous industry accolades and awards for its CUISINART brand.  In fact, several times CUISINART branded products have been awarded The Chicago Athenaeum Good Design Award, a prestigious award for the most innovative and cutting-edge industrial, product and graphic designs produced around the world.  For instance, in 2017, Conair received this coveted award for its CUISINART cold brew coffeemaker as well as its slicer, shredder and spiralizer product.  In 2016, two CUISINART products, the steamer and frozen dessert maker, also received this award.  The CUISINART expresso/coffee machine won this award in 2015 and the CUISINART steam and convection oven won in 2014.

33. Plaintiff's advertising and promotional campaigns for the CUISINART brand have also garnered industry accolades.  In 2014, Plaintiff was awarded the Gold LACP Spotlight

Award for Cuisinart's Digital and mobile Bridal Marketing Hub.  In 2012, Plaintiff garnered the Platinum MarCom Award and Silver LACP Spotlight Award for its Cuisinart IPad application.  More recently, in 2018, Plaintiff received recognition for its Cuisinart Recipe RoadTrip Contest by receiving an AVA Gold award in the digital marketing and social campaign category, and the Cuisinart Marketing Department won awards, including Cynopsis Media's Top Women in Digital as well as Consumer Goods Technology's Visionary Award.

34. Sales under the CUISINART brand have averaged more than $600 million annually over the past five years.

35. By virtue of this extensive usage in connection with so many highly regarded products and services, the CUISINART Marks are widely known to the general consuming public of the U.S., are famous and represent goodwill of enormous value to Plaintiff.

36. The CUISINART Marks are a household name among general consumers and the trade alike.

37. Plaintiff owns numerous U.S. federal trademark registrations for the CUISINART Marks, including without limitation those shown on Exhibit A hereto.  Registration Nos. 3761310, 3958734, 3651099, 1183520, 2925947, 3101863, 1048883, 3486387, 1831908, 2270641, 2313580, 2537394, 2765776, 3178566, 3286911, 3587789, 3345515, 3673593, 3599455, 3845912, 4154956, 3137151, 3764960, 3356861, 4097038, 4154957, 4109328, 4210729 are incontestable.

38. As a result of the long and continuous use, promotion and advertisement of the CUISINART Marks and CUISINART brand, as well as the extensive coverage in the media as well as industry recognition, the CUISINART Marks have developed widespread fame and

consumer recognition, long prior to the acts of Defendants complained of herein. The CUISINART Marks have become icons of modern commerce and function as unique source identifiers for Plaintiff.

II.     **Defendants' Infringing Conduct**

39.     Upon information and belief, Defendants operate a number of companies that sell equipment, supplies and services to the food service industry.

40.     Defendants market their products to the same class of consumers to whom Plaintiff's products are marketed and they are sold through the same sales channels.

41.     In particular, Defendants distribute kitchen products and appliances through Webstaurant, which operates a website at www.webstaurantstore.com (the "Webstaurant Store Website")

42.     Defendants also manufacture and sell their own products under various brand names, including, in particular, AVAMIX, which is used by Defendants in connection with a line of commercial blenders. Upon information and belief, AVAMIX blenders are sold through the Webstaurant Store Website and other retail channels.

43.     In addition to the Webstaurant Store Website, Defendants maintain websites at clarkassociatesinc.biz and therestaurantstore.com, which Defendants also use to advertise and promote their products.

44.     Recently, Defendants decided to expand their product offerings by introducing commercial blenders in stainless steel that copy the Waring Blender Trade Dress. They are also using a slavish imitation of the CUISINART Marks to advertise their products and drive consumers to their websites.

45. An example of Defendants' infringing AVAMIX blender that copies several features of the Waring Blender Trade Dress is shown below:



46. Defendants' blender shown above infringes the Waring Blender Trade Dress by copying the key features of Waring Blender Trade Dress, including the distinctive sculpted indentations on the container, the two uniquely shaped handles and the black and gray base and 4-prong black jar pad bearing the same shaped prongs. These similarities cannot be the result of happenstance and clearly derive from intentional copying.

47. In a further effort to steal Plaintiff's goodwill and ride on its coattails, Defendants have used the mark QUISINART -- the phonetic equivalent of CUISINART -- in advertising to promote their retail services and direct traffic to their Webstaurant Store Website and competing products.

48. An example of Defendants' use of QUISINART is shown below.

11



49. Notably, the food processor shown in the image is not a CUISINART product, but a rival product from a competitor, KitchenAid, that Defendants sell. Defendants do not sell CUISINART-brand food processors.

50. Upon information and belief, Defendants used these ads to promote their retail services, manipulate search engine results and thus direct customers searching for genuine CUISINART products to Defendants' competing products.

51. Defendants' use of the Waring Blender Trade Dress and CUISINART Marks is deliberately designed to deceive consumers into believing that Defendants are associated with Plaintiff.

52. Upon information and belief, Defendants' acts described above were knowing, intentional and willful and committed with knowledge of and disregard for Plaintiff's rights and specifically designed to misappropriate the goodwill of the Waring Blender Trade Dress and CUISINART Marks.

31534/000/2536292.4

53. Defendant's calculated imitation and infringement of the Waring Blender Trade Dress and the CUISINART Marks is likely to cause confusion, mistake and deception among the consuming public and cause consumers to believe that the Defendants' goods originate from, are associated with or are authorized by Plaintiff or that Plaintiff sponsors, owns, endorses, approves or otherwise is commercially involved with or related to Defendants' business and/or that Defendants' goods and services are form the same source as Plaintiff, all to the damage and detriment of Plaintiff's reputation, goodwill and sales.

54. Further, Defendants' use of the QUISINART designation is likely to dilute the famous CUISINART Marks by blurring the distinctive character of those marks, all to the damage and detriment of Plaintiff.

55. Upon information and belief, Defendants commenced their infringing conduct many years after Plaintiff established rights in the Waring Blender Trade Dress and long after said trade dress had acquired significant goodwill and secondary meaning among the consuming public.

56. Upon information and belief, Defendants commenced their infringing conduct many years after Conair established rights in the CUISINART Marks and long after said marks became famous among the consuming public.

57. Upon information and belief, by virtue of its unlawful conduct, Defendants have made or will make substantial profits and gains to which they are not in law or equity entitled.

58. As a result of Defendants' actions, Plaintiff has been damaged in an amount to be determined at trial.

31534/000/2536292.4

59. Defendants' unlawful activities result in irreparable harm and injury to Plaintiff. Plaintiff has no adequate remedy at law.

## FIRST CLAIM FOR RELIEF
**(Federal Trademark Infringement in Violation of 15 U.S.C. §1114(1))**

60. Plaintiff repeats and reincorporates the allegations contained in Paragraphs 1 through 59 above as if fully set forth herein.

61. Defendants' use of the QUISINART designation as described above constitutes infringement of Plaintiff's registered CUISINART Marks in violation of section 32 of the Lanham Act, 15 U.S.C. §1114(1).

## SECOND CLAIM FOR RELIEF
**(Federal Trademark and Trade Dress Infringement, False Designations of Origin, and Unfair Competition in Violation of 15 U.S.C. §1125(a))**

62. Plaintiff repeats and reincorporates the allegations contained in Paragraphs 1 through 59 above as if fully set forth herein.

63. Defendants' activities as described above, including its use of the QUISINART designation and its sale of the AVAMIX blenders that copy the Waring Blender Trade Dress, constitute trademark infringement, trade dress infringement, false designations of origin and unfair competition in violation of section 43(a) of the Lanham Act, 15 U.S.C. §1125(a)(1)(A).

## THIRD CLAIM FOR RELIEF
**(Dilution In Violation of 15 U.S.C. §1125(C)**

64. Plaintiff repeats and reincorporates the allegations contained in Paragraphs 1 through 59 above as if fully set forth herein.

65. Plaintiff's CUISINART Marks are distinctive and famous, and enjoyed such distinctiveness and fame long prior to Defendants' use of the QUISINART mark as described above.

31534/000/2536292.4

66. Defendants' use of the QUISINART designation as described above constitutes dilution of the CUISINART Marks by blurring in violation of 15 U.S.C. §1125(c).

## FOURTH CLAIM FOR RELIEF
### (Common Law Unfair Competition)

67. Plaintiff repeats and reincorporates the allegations contained in Paragraphs 1 through 59 above as if fully set forth herein.

68. Defendants' activities as described above, including its use of the QUISINART designation and its sale of the AVAMIX blenders that copy the Waring Blender Trade Dress, constitute unfair competition under the law of the State of New York.

## FIFTH CLAIM FOR RELIEF
### (New York General Business, §360-l)

69. Plaintiff repeats and reincorporates the allegations contained in Paragraphs 1 through 59 above as if fully set forth herein.

70. Defendants' use of the QUISINART designation as described above causes a likelihood of dilution of the distinctive quality of Plaintiff's CUISINART Marks, in violation of New York General Business Law § 360-l.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

1. That Defendants and all those persons or entities in active concert or participation with them who receive actual notice of the injunctive order, be preliminarily and permanently enjoined, from:

   A. Using, advertising, promoting, displaying, or exploiting in any manner, the Waring Blender Trade Dress, the CUISINART Marks or any other trade dress or marks confusingly similar to, or likely to dilute, the Waring Blender Trade Dress or

CUISINART Marks, including without limitation the QUISINART mark, in connection with any goods or services;

  B. Committing any other acts calculated or likely to cause the public to believe that Defendants or their goods or services are in any way connected, affiliated or associated with Plaintiff; and/or

  C. Competing unfairly with Plaintiff in any other way.

 2. Pursuant to 15 U.S.C. § 1118, that Defendants deliver to Plaintiff for destruction all material (including, without limitation, all products, catalogs, advertisements, promotional materials, brochures, signs, displays, stationary and business cards), within their possession, custody or control, either directly or indirectly, that bears the Waring Blender Trade Dress, the CUISINART Marks or any other marks or trade dress confusingly similar thereto, including, without limitation the QUISINART designation.

 3. Pursuant to 15 U.S.C. § 1116(a), that Defendants be directed to file with the Court and serve upon Plaintiff, within thirty (30) days after entry of final judgment, a report in writing and under oath setting forth in detail the manner and form by which they have complied with the provisions set forth in paragraphs 1 and 2 above;

 4. Pursuant to 15 U.S.C. § 1117(a) and the common law of unfair competition, that Defendants be directed to account to Plaintiff for all gains, profits and advantages derived from Defendants' wrongful acts and pay to Plaintiff all damages suffered by Plaintiff as a result of Defendant's unlawful conduct;

 5. Pursuant to 15 U.S.C. § 1117(a), that Plaintiff recover from Defendants three times the amount of Defendants' profits or any damages sustained by Plaintiff, together with interest on such amount and the costs of this action;

31534/000/2536292.4

71. Pursuant to 15 U.S.C. § 1117(a), that Plaintiff recover from Defendants Plaintiff's attorneys' fees and costs in this action; and

72. That Plaintiff have such other and further relief as the Court deems just, equitable and proper.

Dated: February 11, 2019
　　　　New York, New York

Respectfully submitted,

COWAN, LIEBOWITZ & LATMAN, P.C.


　　　　/Meichelle R. MacGregor/
Meichelle R. MacGregor (mrm@cll.com)
Richard S. Mandel (rsm@cll.com)
114 West 47th Street
New York, New York  10036
(212) 790-9200

Attorneys for Plaintiff Conair Corporation

31534/000/2536292.4